Good morning. Good morning, Counsel. You may proceed. Good morning. Michael Brody on behalf of the Hertz Corp. and may it please the Court. The District Court in this case entered judgment against Hertz for its non-deceptive, truthful disclosures of the prices it charged its customers. That was error. In addressing this appeal, I'd like to start with two underlying principles, which I think are not in dispute. First, there is no question in this case that Hertz's practices were not deceptive. The District Court found that no one was deceived. In fact, throughout the entire reservation process, from the first time a customer goes to the website to the time the customer appears at Hertz, the time the customer drives out of the door, the customer knows every dollar the customer will be charged. This is not an instance where a low price is promised and a high price is charged. Quite to the contrary. And that's why the District Court found Hertz's practices were not deceptive. The second principle that I think affects this appeal is that Nevada law explicitly permitted Hertz to charge the airport concession fee to the customers. Hertz did not have to absorb this fee. The Nevada statute is not a price control statute, nor is it intended to be confiscatory. It doesn't say, Hertz, you have to lower your rates by 10% in Las Vegas and 11.5% in Reno. No, it explicitly permits Hertz to charge the airport concession fee to the customers. As I understand it, as a result of this law, not just Hertz, but basically all the car rental companies unbundled the fees and did exactly what Hertz did in this case. Is that correct? Correct. So if you are liable in this case, presumably the plaintiffs will charge, all the other auto companies with the same violation. Is that correct? The plaintiffs sued Enterprise. That was a separate lawsuit. They did not sue the other rental companies for reasons known to them. Would the statute of limitations have run so that if they were successful here, they would not be able to go after the rest of the auto companies? I don't want to speak for the plaintiffs, but I think the answer is yes, Your Honor. Okay. In this case, notwithstanding the fact that Hertz's conduct was not deceptive, and there is no finding that anything Hertz did here resulted in a dollar of extra price to the consumer, the district court found the statute prohibited Hertz from listing the airport concession fee on a separate line. Hertz's error was giving too much information. In telling the consumer that part of the money that was being paid in this transaction was not going to Hertz, but instead was going to the airport, that was errored. The court further erred in its determination of the remedy, squeezing within the statutory authorization to grant equitable relief a remedy that was not equitable, did not follow the principles of equity. Counsel, let me ask you this. If one of the things that the district court found here was unjust enrichment, in what way, if any, was Hertz enriched? None. It passed on all of the fees to the airport, right? Exactly. On a monthly basis, Hertz passed on the fees. The evidence in the record indicates that every dollar collected by Hertz was paid over. There was a separate account in which these fees were kept, and it was cleared out on a regular basis. Is there any legal basis that you can think of where Hertz benefited from the retention of those fees for less than a month?  And if there were some claim of improper benefit measured by the use of the money for a period of days, that wasn't the plaintiff's claim. The damage here is the claim is for $57 million. The text of SB 234 suggested that it was a clarifying amendment, at least to me. It seemed that way under Public Employees Benefit Program versus Las Vegas Metro Police Department. It suggests that the Nevada Street Court treats as persuasive evidence of what the legislature originally intended when there is a clarifying amendment. The district court somehow construed this amendment as being a change in the law. Would you address in what way this was a clarifying amendment, and from your perspective, why it was not a change in the law? Well, Your Honor, the statute, the 2009 activity changed two portions of the statute. First, it made clear that the language fees paid to airports, the operative language the district court focused on, meant the airport concession fee. It added the language including without limitation. So it didn't change. It didn't take out fees paid to airports and replace it with direct fee or the sorts of things the plaintiffs were talking about. Instead, it just clarified what was meant. Secondly, it addressed the second part of the language that the district court found ambiguous in its motion to dismiss ruling, and that was the lessee must pay language. And instead of having this lessee must pay language, which frankly I think supported us anyway, it said language that the lessee must pay to rent the car, making clear that as long as the money the lessee is paying is part of the contract of rental, that it's the sort of thing that can be charged separately. The reason why we say that's consistent with the prior language is the language in place from back in 1989 referred to things such as mileage that the lessee must pay. Again, mileage is a charge assessed or not by the rental car companies at their discretion. It's not something imposed by a third party, which was what the district court focused on. And again, all of the car rental companies did exactly the same thing. In each instance where the legislature enacted a new law, right, whether it was clarifying or not, they all did the same thing. Correct. After the 2009 amendments, I don't think any changes happened because it was consistent. Because it was consistent, you've been saying. Right. That's correct. And at the same time, the leasing authorities, the airports in Reno and Las Vegas, reacted to the legislative enactments and changed their leases. At one time, the leases had prohibited this practice, but in light of these laws, the leases were amended to permit precisely what Hertz and the other rental car companies did. Counsel, could you respond to your opponent's argument that the 2009 amendment makes no mention of clarification or of this kind of situation? I think she refers to AB 612, legislative history. The legislative history, I think, has something for everybody. As we point out in the briefs, there are references to this amendment being a change and references to it being a modification. The plaintiffs rely on the veto message in which the Nevada governor vetoed this legislation initially. In that veto message, the governor is objecting to other parts of the bill. And you have to keep in mind that the 2009 amendments, in addition to addressing our disclosure statute here, also changed other portions of the rental car regime, including additional fees. I think that's what the broader language that speaks to changes about reference. It led to an increase in certain fees. That was not the issue here. It was just a companion of the bill, but dealt with new fees, right? Correct. The portion we're talking about was tacked on to a broader message. And so I think much of the legislative history and legislative statements that are referenced touch upon a variety of different provisions. The 2009 amendment has attracted a lot of attention in this case. But I think the original statute, if we go back to the statute that was in place from the very beginning, that statute plainly authorized what Hertz did. It permitted Hertz, it required Hertz, as it always did, to list the all in charge. There was never any deception. And it permitted separately listing fees paid to airports. So looking at the statute, you say that was perfectly clear, no problem with it. Why then did the legislature amend, whether verifying or changing, why did they amend the law? Was it because there was confusion? The district court had, shortly before, ruled it to be ambiguous. Okay. So the statute was amended only after the district court found the original statute to be ambiguous. Correct, Your Honor. The district court ruled in 2007. The statute was amended in 2009. It's my understanding that Nevada legislature sits every other year. I think that was the next opportunity for action. And the district court had in its motion to dismiss ruling, focusing on the two portions of the statute that I addressed, found it to be ambiguous. Now, we submit that original ruling was error. That the statute permits Hertz to list any fee, not just direct fees, not certain kinds of fees, but any fees. And this was a fee payment. What is the date of the cause of action arising in this case? What is the key date? The lawsuit, I don't have the precise date in front of me, Your Honor. The complaint was filed in 2007, and the class period goes back to 2003. So are we free to ignore what happened in 2009? I think you're free to ignore it, because I submit the original intent of the motion, which is reflected in the words they chose, permitted Hertz to list any fee, and this is a fee, as long as that fee is paid to the airports, and this was paid to the airport. I think the 2009 amendments make clear the original intent, and resolve the ambiguity that the district court found. So, with respect to the district court's original construction of the statute, if, arguendo, we were to find that it was clear on its face, and the district court mistook that, what responsibility, if any, do we have to defer to the district court, if any? None. The district court ruled in the Rule 12 motion, as a matter of law, the court denied the motion. When the court ruled in 2009 on liability, the court ruled in a summary judgment motion. So again, those are subject to plenary review in this court. The last thing I'd like to add about the statute is,  the question of consumer protection. As is clear from the district court's ruling, that there is no deception. The purpose of the statute was to see to it that companies like Hertz would not deceive customers as to the amount they were charging. And the finding that there was no deception goes a long way to resolving any residual questions the court might have about how the statute should be interpreted. Let me ask you about the Nevada DTPA statute. It's kind of like the California Consumer Statute as well. It piggybacks on an underlying cause of action, is that correct? By that, I mean, if there is no breach of the original statute, then there is no DTPA claim, because you have to have one and the other. What's a predicate, is that right? Also, I believe the Nevada statute permits a cause of action for deceptive or unfair trade practices. Independent then? Correct, and it defines a variety of things that can be deceptive, but they speak in terms of deception and misrepresentation. And our contention is the district court's ruling that there was no deception resolves that claim. Do you want to say something about the class certification? Well, I will, Your Honor. We think the case is best resolved on a proper interpretation of the statute. And given a proper interpretation of the statute and a proper assessment of the remedial statute, which requires some loss, this case cannot be certified as class. There are variations among class members as to their understanding of the statute, as to their understanding of the charges, and as to loss. Many of the rental car customers are repeat customers. If they come back a second time, they certainly know how they're going to be charged. They've been through the transaction once. So it was error to certify a class as the court did, particularly given its underlying errors on liability and remedy. And the point I made on class certification allows me to touch on the issue of voluntary payment. Nevada sets the voluntary payment doctrine. Since the district court refused to adopt it in this case, the Nevada Supreme Court has again accepted the voluntary payment doctrine in its Nevada Association Services case. And that doctrine states that a fully informed customer who makes a payment may not recover it thereafter, and the purpose of the statute is to, among other things, promote stability in commercial transactions. In this case, the district court has directed the return of a large amount of money, a portion of the monies received by Hertz, and paid to the airport authorities. From the 2003 to 2009 time period, based on a ruling the court made in 2013, that ruling certainly does not promote stability in commercial transactions and serves no legitimate purpose, given that there is a finding of no deception and there is no evidence of overcharge. So in light of that, the voluntary payment doctrine dovetails neatly into Hertz's argument that the original intent of the statute, as made clear by the clarifying amendments in 2009, does not create a cause of action. And furthermore, the remedy that the court imposed in its remedial ruling is not a damage remedy. The court took pains to say that it was not and does not fit within the confines of equitable restitution. The fact that Hertz has returned or paid every dollar that it collected pursuant to this method of pricing to the airport authorities shows that equitable restitution, ordered many years later, is inappropriate. Counsel, could I interject a question, please? Of course. Assuming that we were to agree with your client's position, on the proper interpretation of NRA, the Nevada Statute 482.31575, which we see there was no problem with what Hertz did, what happens to the issue on class certification? Well, given that the court has... Your Honor, I think the easiest answer for me, and I'm going to pause on this because I'm not sure it's right, but the easiest answer is affirm class certification and the entire class is bound if the case is dismissed. I'd have to think that through further to see if the predicate for whatever the court were to rule on the disclosure statute would undermine the class certification ruling. It may, in which case, only the class representatives would be bound. I think it would depend in part on the nature of the court's ruling. Okay, thank you. Yes. I'll reserve the rest of my time for... You may do so, counsel. Thank you. We'll hear from the appellees. Good morning. May it please the court, I'm Arthur Stock. On behalf of the appellees and class appellants Janet Sobel and Dan Dugan, and the certified class... If you could bring the microphone down just a little bit, it would help the audience. Very well. This is an illegal charge case. It's not a deception or a fraud case. It's not a disclosure case, and it's not a freedom of speech case. Hertz collected an illegal charge from class members, and Judge Hicks ruled that they should get their money back. That's all. The statute of issue in this case was passed in 1989 to deal with confusion and misleading charges in rental car bills by Hertz and others. I'm puzzled. Do you dispute the fact that Hertz remitted 100% of the amount that you say was illegally collected to the airport? Hertz did make rent payments for its properties on the airport. Let me ask you a question. Did Hertz pay to the airport 100% of the money that you claim was illegally collected? We don't know if the money was actually traced in that way. We do know that Hertz did make these payments, but we don't have a particular reason to believe so. So you don't know one way or another? That's correct. So you don't know they didn't either, right? We do know that that's irrelevant under Nevada law, but we don't know what they exactly did. Maybe it is, maybe it isn't. Let's assume for a moment that they did. Okay. Where's the unjust enrichment? The unjust enrichment came because Hertz received money that it was not entitled to receive from our clients. Although it was not part of Judge Hicks' decision, there's also a fair amount of evidence that when Hertz put the concession fee recoveries onto the bills, they did not lower their base rates. Rather, they increased the total income that they received from their customers. Did you charge that? Is that in your complaint? It's in the record. It's in the response to incidental summary judgment briefing. Okay, but you didn't charge them for doing anything wrong there, right? No, it's not. The wrong was in the surcharges. The wrong is not in whether they raised or lowered their base rates, but it was wrong to have a surcharge. I'm really puzzled because my understanding of the equitable remedy here in unjust enrichment is if the tort fees were got some money, got something, benefited. I don't see where Hertz benefited in any way. How did they get benefited? Well, Hertz benefited because when they started adding this charge, they received more money from each customer for each day of rental than they had previously. That's one form of benefit. I thought that before everything was bundled. This just unbundled it, but that the fees were the same. Is that wrong? The fees paid to the airports were the same. The fees that the amount of money that Hertz received from its customers increased. Do we know that? We have testimony from several Hertz employees to that effect. We also have conflicting expert testimony. But as far as I understand, all of the factual testimony states that they did not decrease their, that the total amount of money they received after the change was created. From your perspective, the unjust enrichment was not this fee that was created. It was some other amount of money that Hertz received that it would not otherwise have received. Is that correct? That wasn't. I think you're way off the record. I want to know where it is. Where in the record does it say that? With respect to the increased profits by Hertz, we have a memorandum from Simon Ellis, I believe, who made a calculation when they started adding concession fee recoveries to a new set of customers in Reno. And he calculated that what he called incremental value, which I believe is the same as profit. And who is this gentleman? He was essentially responsible for operations, including selling prices in Reno. Especially with Hertz, right? With Hertz. Oh, yes. And when the district judge made the calculation about the unjust enrichment, you relied on this on this memorandum? This information is in the record and was put before the district court judge. Judge Hicks did not rely on this, and he principally relied. He also did not provide a remedy for unjust enrichment. He was principally providing that using the equitable principle. Well, we saw unjust enrichment in the complaint, is it not? Unjust enrichment is on the case. And you're saying that they got more money than they were supposed to get, but the district court didn't rely on that. That's correct. The district court relied on something that they passed on to the airport. Is that right? We don't believe that it makes sense to say that Hertz passed on the illegal overcharges to the airport. I agree it makes no sense, but I'm asking you what the district court relied upon in making the calculation about the unjust enrichment. The district court relied on the fact that it was an illegal charge and that Hertz was not entitled to a charge outside of the base rate for the purpose of concession fee recovery. And in that sense, it received more money than it would have had it not put that charge outside of the base rate. And in what way did it get more money other than the other third-party thing that you talked about a minute ago based on the memorandum, which is not part of what the district court relied upon? Well, Hertz did. Hertz did. What Hertz got was 10% more money than it would have got if it had not had a surcharge on its bills, yes. That's the one you just mentioned, but the district court didn't rely upon that. The district court relied upon the money that Hertz gave to the airport. I'm just confused as to what you pled one thing. It seems now like you're saying that he did something wrong in a different way, right? I believe that the district court did take into consideration, it was certainly before the district court, Hertz's actions throughout both before and during the class period in respect to, which demonstrate that Hertz certainly believed that it would increase its profits by adding a surcharge. How is that at all? There's additional information on that, including Hertz's initial decision to charge the concession fee recovery. There are several different opponents who were involved at Hertz at that time who explained that they thought it would improve their competitive position and their profit margins. And the district court relied upon that? It did not cite the particular evidence, but it did. I don't know if it actually relied upon that. Okay, so let's not even talk about that. Let's put that away. I want to know what the district court relied upon. What I'm understanding is this other, we'll call it the third-party claim, that was not before the district judge. He didn't rely upon that. He based his adjusted enrichment claim based upon an amount of money that Hertz collected and let, say, pass on to the airport because they thought they had to do it. Not just Hertz, but every other rental car company did that, right? Some other rental car companies did that. There's no record about what all of the other rental cars did. Did you sue any of the others? What did you sue? We sued the second-largest in these markets, which is the Enterprise Company, which encompasses Alamo and National Car Rental as well. Why didn't you do any of the rest of them? Our plaintiffs are individualized companies, essentially. But bottom line is, what they did, everybody did. Oh, they sued it, yes. And Judge Hicks did talk, did consider that and explains precisely why. That's not really an excuse. And that was explained in his decision that, essentially, if there are laws in place that every corporate citizen as well as every individual citizen simply should follow the law and it doesn't matter what other people do. Based upon the unjust enrichment part, if the record seems to show that Hertz got nothing other than this third-party claim that you're now bringing up from the money that it has, does it not? Under those circumstances, how could they be enriched? The restitution claim does not fail under those circumstances. And the restitution claim is the claim that Judge Hicks relied on in making the monetary award. Restitution pays the bond if the fee is owed to the airport. And the statute says that the fee is owed to the airport, but there's nothing to restore, is there? Oh, there is something to restore. First of all, the fee that the consumers paid was not owed to the airport. In fact, they did not actually pay a fee at all. They paid a fee recovery. There was no fee recovery owed to the airport. The fee recovery was something that Hertz would use to recover its fee. But also notice that it's a concession fee recovery, and the customers of Hertz get no concession. The statute arguably authorized them to recover that fee, right? The statute did not authorize them to recover that fee. Based upon Judge Hicks' construction of the original statute, right? We understand that Judge Hicks' and others' construction of the statute, including the operators of the Reno Airport, is correct, yes.  If we disagree with Judge Hicks' construction of the statute, the whole thing goes away, right? The case does depend on the fact that our clients did not pay a fee,  or they paid a fee recovery that Hertz collected and retained, and then Hertz had other obligations to the airport that were not our clients' obligations. That is the fact that our case depends on. And to Judge Gould's question, if, and I'm just speaking arguably, you're not worried, I'm just, if we believe that the statute, as originally drafted, was clear and did permit this, what do we do with the class certification? The class, the class has been certified, which means that all class members are going to be bound by injunction. Okay, so if the case gets dismissed, they're bound as well? There is a question before this court about whether class certification was proper, so if the court also rules that class certification was improper, then I'd like to share with Mr. Brody some information about what happened in that circumstance. Counsel, are you raising the Deceptive Trade Practices Act claim? It's challenging. Judge Hicks is ruling on that. Yes, we have a class appeal. We believe that Judge Hicks misconstrued the Deceptive Trade Practices Act. And what's the basis of your claim? Well, Judge Hicks said correctly that a knowing violation of this statute would also be a violation of the Deceptive Trade Practices Act, under the precise wording of the Deceptive Trade Practices Act. And he's going against you on that? Yeah, Judge Hicks, we think, erroneously said that claim, that there was a knowing violation. There was a violation, but not a knowing violation. Well, what evidence is there of a knowing violation here? There are two aspects. One is, what does knowing mean? And we contend that knowing in this circumstance means that they knew that they were charging a concession to recovery. It does not necessarily mean that they were violating the law. However, to the extent that Judge Hicks' ruling depends on the concept that they were knowingly violating the law, there's considerable evidence. Their own lobbyists in 1995 said that they were legally precluded from charging a concession for recovery, and that's why they wanted to change the statute in 1995, which they did not get. The legislature did not accept that argument, or did not make change to law at that time. So their own lobbyists said in 1995 that Hertz needed legislation because it was currently unable, legally, to charge a concession for your recovery, which it needed to compete with the other versions. So the district court relied upon what a lobbyist, Robert Hertz, said in 1995. Both courts did not find a knowing violation, but that's part of the evidence that we would put forward as a knowing violation. But there's more. In 2004, 2005, and 2006, the Reno Airport Authority sent various communications in connection with leasing bids to Hertz directly, and some to all of the other on-airport rental companies as well, explicitly stating that the concession for recovery is not a fee paid to an airport. It's a fee paid by the car rental company that should not be surcharged under Nevada law. So they received that message in 2004, 2005, and 2006. That's a further excerpt of record. And beyond that, Judge Hicks told them in 2007 that this charge was an illegal charge, and yet they continued to make these charges, even after a ruling by a federal judge, a federal district court judge, stating that these fees are illegal. They continued to charge these fees. That tells us two things. One, it became a knowing violation at that time, and two, that there must be some economic incentive. Hertz must believe these fees are profitable to it, because otherwise why would they continue to charge these fees, even after being told by both the airport authority now and by a federal district court judge that these fees are improper, are illegal. I'd also say that the grant of equitable release, first of all, is only viewed on an abusive discretion standard, and we believe that the Nevada case of Feldman versus Nevada is dispositive as to whether the remedy is available here. It's a remarkably similar case. It also involved a fee that was charged outside of the law, which was in fact used by an insurance broker. It also involved or involved something that Hertz claims it's doing, which is complete disclosure of the fee to both of the broker's customers and to the division of insurance at the time. Mr. Feldman actually wrote a letter to the division of insurance, saying he was going to institute these fees, which Hertz did not actually do. He wasn't comparable to that. But to the extent that it matters whether or not Hertz was fully disclosing the information, the answer is it doesn't matter because the Feldman case says it doesn't matter. And Mr. Feldman was found by the district court. Mr. Feldman had his license suspended, and he was ordered to provide restitution to his customers for the $25 fees. The district court, he found that in a state district court in Nevada, and the district court found that he had acted in good faith at all times, and accordingly his license should not be revoked and he should not have to refund the money that he had received. The Nevada Supreme Court partly accepted and partly rejected that, but the Nevada Supreme Court held that he had, or accepted the district court's ruling, that he had acted in good faith. And it's hard to the extent Hertz claimed to have taken good faith there. We don't agree, but it doesn't really matter. Here, at least outside of the deceptive trade practices claim, it doesn't matter if they're acting in good faith, as the Feldman case demonstrates. Mr. Feldman, the license revocation for Mr. Feldman was reversed because he had acted in good faith, but he still had to return the money because it wasn't his money, because it was an illegal charge, and to some extent because he had been told of that by a regulatory officer during the time that he was charging these, which is precisely the situation we have here. In our case, it wasn't an insurance division ruling. It was a federal district court judge who told Hertz that the charge was illegal and that it should not be charged. So we think that case is very much dispositive. We also have to assume, then, that the judge was right. Well, it's the Nevada Supreme Court. Its rulings are binding on this part. They're going to apply it if they apply to the case. If they apply to the case, that's correct. It also asks about whether the money was passed through or not, and again, we have a case, the Wheeler Hot Springs Plaza case, the Wheeler Springs Plaza case that was fully decisive on that issue. The Wheeler Springs Plaza was entitled to restitution of a judgment, a district court judgment that included a line for attorney's fees and was that dollar amount that it had paid, but it also appealed the underlying ruling. The issue arose after it was successful on appeal, whether it was entitled to get its money back since it had already paid the full amount of the judgment, and the Nevada Supreme Court, again, binding on this court, ruled in that circumstance that not only was Wheeler Springs Plaza entitled to get its money back for the amount of the judgment that went to the plaintiff, it was also entitled to get its money back for the attorney's fees judgment that it had paid, and the opposing parties said, well, we can actually pay those attorney's fees to our attorneys, as we had to under our contracts with the attorneys, and that was found to be irrelevant. The plaintiffs who received the unjust enrichment, including the amount labeled on them that was still labeled for attorney's fees, had to return the full amount of the money that they had received. I take your point, but I guess I would get back to the fact that if Judge Hicks' arguendo misconstrued the statute, and the statute expressly authorized Hertz to do what it did, there is no unjust enrichment, right? There's nothing illegal. There would be enrichment to Hertz, even if what they did was absolutely illegal. That's not what we're talking about here. You said the district judge did not rely upon that in awarding the unjust enrichment. They relied exclusively on the amount of money that Hertz says it would pay to the airport. That's correct. If the statute did allow Hertz to make these charges, then there wouldn't be a case that is correct. But we don't think that's the circumstance here. No, I can get it. You wouldn't be here if you didn't. That's correct. And Judge Hicks didn't either. Anything further, counsel? Do I reserve time for rebuttals? No. Yes, I do have some more things to say. We mentioned the voluntary payment doctrine. That does not fit the circumstances of this case. The voluntary payment defense depends on several things, one of which is complete knowledge at least of all relevant facts. And the one about a Supreme Court case in the last century also stated at length that the plaintiff against whom it was being invoked had actual knowledge not only of all of the facts but of the relevant locks. He had written a letter before he made the voluntary payment to the other party, explicitly stating the statute that he believed was governing this payment and saying that he would not make any payments that were not within this particular statute, which he put the statutory number and everything in the letter. Then he made a full payment of the amount that he had been billed. So that's a very clear case of a voluntary payment despite complete knowledge of the facts and some knowledge of the legal dispute as well. There's some question about whether knowledge of the law is a prerequisite for the voluntary payment defense. But in this case, our clients, and we believe none of the class members, had knowledge of the relevant facts either because nobody knew what a concession-free recovery was. I certainly didn't before I got involved in this case. Our clients didn't according to their depositions. And it was simply an ambiguous reference to something that some people might have believed was a tax and everyone probably certainly believed was a legal thing, whatever it was. And as far as that goes, they did not have full knowledge of the relevant facts. The Nevada Association case does list a defense to the voluntary payment defense based on an error of law that is induced by the opposing party's conduct. And in this case, it certainly induced the opposing party's conduct in making the payment because they put these lines on the bill that were difficult to understand which certainly suggested there was a charge that was either required or permitted by law there. And that's how it was induced the payment. Finally, there are several reasons that Judge Hicks relied on. The voluntary payment defense simply should not apply to a consumer case. And the Nevada Supreme Court did cite the Indiana Supreme Court's ruling in the Whiteman case which held ultimately that the voluntary payment defense did not apply to a consumer case. I'll add one more that's not in the brief which is section 3159 of the rental car code which states that all the conditions, including 31575, are non-waivable. And to the extent the voluntary payment defense is a form of waiver, we think that it is impermissible under that statute. I also want to say briefly with respect to pre-judgment interest, another issue that Judge Hicks found had been waived by the district court at the district court level, that it's certainly part of the statute and 17.130 does apply to these kinds of actions. And there's a Nevada Supreme Court case, Crest v. Becker in a 2008 Nevada Supreme Court case which expressly applies to section 17.130 for pre-judgment interest. I thank the counsel. Your time has expired. Mr. Rode, you have some reserve time. Action. I'd like to address the issue of remedy, start there, and the plaintiff's surcharge argument. We have to keep in mind what the district court said here. In the motion to dismiss, the district court said, the issue before the court is not whether airport concession fees may be charged to customers. The district court never addressed this issue of whether there was a surcharge, made no finding of a surcharge, and if that is an element of the plaintiff's case, reversal is required. But what is the evidence on that point? The evidence on that point is that in 1995 or 1996, the rental car companies, in response to the legislative changes and the changes in their leases, which for the first time permitted this practice, began listing concession fees separately, while still at the same time always listing the all-in price. That persisted to the class period, which began in 2003. So the plaintiff's argument is that for some reason this change in 1995 persisted in an increase in price in 2003 and thereafter. There was evidence presented on that, presented at the damage phase, at the remedy phase of the case, and the evidence showed that there was no statistically significant change in price as a result of this unbundling. But even if there was a change in price, the statute does not prohibit Hertz from setting any price it wishes. It could charge $1,000 a day for all-in care so it would lose customers, but it could do that and still comply with the statute. The plaintiff's damage theory, the way they tried to show any damage at all, was to assume, was to instruct their experts to assume that Hertz would have to follow the law as Judge Hicks described it, that none of the other rental car companies would, and that this disequilibrium in the marketplace would exist from 19-whatever, 95 or 6, until the present day. That makes no sense, and maybe for that reason, I'm not going to presume, Judge Hicks did not find damages. So this idea of a surcharge or the claim that Hertz charged too much  and by the evidence. How does that relate to the remedy cases? The plaintiff relies on the Feldman case and also talks about the Landax case. Those are great cases. In Feldman, the defendant charged a $25 fee he was not allowed to charge, and he was told by the insurance regulator, don't charge it, and he charged it anyway, and he had to pay that back. The court didn't use the word restitution. But there was wrongful conduct and money retained by Feldman. In Landax, the other case that we hear about, the Nevada Supreme Court reversed an order of refund. Again, it didn't use the word restitution. But it reversed the finding, and in that case, it said that absent consumer loss or loss by the plaintiff or fraudulent conduct, there could be no order of refund. Those cases fit neatly within our remedy argument. Why did Hertz not change its practice in 2007 when the district court ruled? The district court didn't find that Hertz violated the statute. The district court denied a motion to dismiss and said that it was an ambiguous statute. And frankly, at that time, Hertz's contracts with airports, in one case required this practice and in the other case permitted this practice. So for a variety of reasons, Hertz has followed the law as it understood the law to be. It's never been told by the Nevada regulators that it was wrong. It was repeatedly told by the airport authorities that it was right. And for that reason and all the others in the briefs, we request the court to reverse the judgment below. Thank you, counsel. Thank you. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Gould, M. Smith